UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/27/2024
```

JODY A. LOVALLO,

                              Plaintiff,

            -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION; PRINCIPAL SARA MEDINA;
ASSISTANT PRINCIPAL MARISA SORBARO;
ASSISTANT PRINCIPAL EILEEN KURPPE;
ASSISTANT PRINCIPAL ALLISON KRENN,

                              Defendants.

23-cv-834 (MKV)

**OPINION AND ORDER
GRANTING IN PART AND
DENYING IN PART
MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff, appearing *pro se*, brings this action against the New York City Department of Education ("DOE") and various DOE employees ("Individual Defendants," collectively "Defendants"), alleging discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA"), the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 296 *et seq.*, the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Michael Daly Code §§ 8–101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* Defendants now move to partially dismiss Plaintiff's Amended Complaint. For the reasons below, the motion to partially dismiss is GRANTED in part and DENIED in part.

**BACKGROUND**[1]

Plaintiff began her employment with DOE almost twenty years ago working as a special education elementary school teacher at P.S. 85 in the Bronx, New York. Am. Compl. ¶ 1. At 57 years old, Plaintiff is the oldest special education teacher and one of the most senior teachers

---

[1] The facts are taken from the Amended Complaint ("Am. Compl." or "the Complaint"), and for purposes of this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

overall at P.S. 85.  Am. Compl. ¶ 2.  In the ten years leading up to 2019, Plaintiff had not received any "Unsatisfactory or less-than-Effective annual rating[s]" with respect to her performance as a special education teacher.  Am. Compl. ¶ 3.

### 2019 – 2020 School Year

In February 2019, Defendant Sara Medina ("Medina") became principal of P.S. 85.  Am. Compl. ¶ 4.  Plaintiff alleges that shortly after, there emerged a noticeable shift in the way older teachers were treated.  Am. Compl. ¶ 5.  Specifically, Plaintiff alleges that Medina, with the help of Defendant Assistant Principals Eileen Kurppe ("Kurppe"), Allison Krenn ("Krenn"), and Marisa Sorbaro ("Sorbaro"), began to target the older and more senior teachers at the school.  Am. Compl. ¶ 6.  Plaintiff alleges a pattern of purported discrimination and retaliation that pervaded her employment over the following three school years.

Beginning in September 2019, Plaintiff began to raise concerns to the school's administration regarding various violations in her students' Individualized Educational Plans ("IEPs").  Am. Compl. ¶ 7.  Only one month later, Plaintiff was the only kindergarten teacher not invited to a phonics program training.  Am. Compl. ¶ 9.  For the 2019-2020 school year, Plaintiff alleges that she was also the only teacher on staff who did not receive an Initial Planning Conference ("IPC").  Am. Compl. ¶ 8.  She further states that she was forced to teach her self-contained special education class in a separate building, in isolation from the other kindergarten teachers at P.S. 85.  Am. Compl. ¶ 10.

In January 2020, Defendant Medina gave Plaintiff an informal observation report, for which she received negative ratings for the first time in at least ten years.  Am. Compl. ¶ 10.  Plaintiff alleges that all the teachers who received poor ratings for the 2019-2020 school year were over the age of fifty.  Am. Compl. ¶ 13.

*2020 – 2021 School Year*

The following school year, Plaintiff was denied her preference for the special education position in the self-contained ("ICT") classes. Despite having the most seniority in ICT classes at P.S. 85, four teachers—all of whom were younger than Plaintiff and had less seniority—received ICT class assignments. Am. Compl. ¶ 14. Defendant Medina went on to change Plaintiff's class assignment twice within four months. Plaintiff alleges that there were younger special education teachers (approximately in their twenties and thirties), and with less seniority, who did not have their grades and classrooms moved. Am. Compl. ¶ 17.

In December 2020, during the middle of the school year, Defendant Medina once again denied Plaintiff's teaching preference for an ICT class and, instead, assigned her to teach a general education class for the remainder of the 2020-2021 school year. Am. Compl. ¶ 18. Plaintiff's ICT class was assigned to a teacher in her thirties, with less seniority. Am. Compl. ¶ 18.

In May 2021, Defendant Assistant Principal Krenn gave Plaintiff mostly negative ratings for an informal observation in mathematics. Am. Compl. ¶ 19. Plaintiff alleges that this observation was in-person, during the height of COVID, with teachers and students wearing masks and undergoing social distancing guidelines. Am. Compl. ¶ 19. On top of those challenging circumstances, fifteen of the sixteen students in the class were classified as English as a New Language ("ENL"), an area in which Plaintiff has no license. Am. Compl. ¶ 19. And yet, Plaintiff was assigned to teach this class. Just two weeks later, Defendant Assistant Principal Kurppe observed Plaintiff in writing and similarly gave Plaintiff negative ratings. Am. Compl. ¶ 20. According to Plaintiff, only older teachers received poor ratings for the 2020-2021 school year. Am. Compl. ¶ 21.

*2021 – 2022 School Year*

Due to her negative ratings from the 2020-2021 school year, Plaintiff was ineligible to

apply for a per session opportunity in the Extended Learning Time ("ELT") program for the 2021-2022 year, despite previously working as a teacher in the same program.  Am. Compl. ¶ 22.  Plaintiff alleges that her inability to apply for the program caused a loss of compensation of approximately $7,922 in her gross pay for that year.  Am. Compl. ¶ 22.

In September 2021, Plaintiff was placed as a general education teacher in a 3rd grade ICT class before she was moved the very next month to a kindergarten class.  Am. Compl. ¶ 23.  Around this time, Plaintiff alleges that she notified administration that her class was non-compliant as it was over the required 60/40 ratio.  Am. Compl. ¶ 24.  Shortly thereafter, Plaintiff's name was omitted from a bulletin board hanging by the main entrance of the school, which listed all other staff.  Am. Compl. ¶ 25.  Plaintiff states that although she advised Defendants Medina and Sorboro that she felt excluded and hurt, they did not add her name to the bulletin board.  Am. Compl. ¶ 25.

The following month, Plaintiff was removed from her 3rd grade ICT class and replaced by a long-term substitute teacher.  Am. Compl. ¶ 26.  The very same day, Defendant Sorbaro issued Plaintiff primarily negative ratings for an informal observation.  Am. Compl. ¶ 27.  During this time, Plaintiff's 29-year-old co-teacher, Brianna Durkin, was not observed and received no negative ratings.  Am. Compl. ¶ 28.  Plaintiff alleges that she worked directly with Durkin as co-teachers, and as such, they were subject to the same performance evaluation and engaged in comparable conduct.  Am. Compl. ¶ 28.

In November 2021, Plaintiff was assigned a plan of assistance, which resulted in excessive paperwork, writing lesson plans weekly, putting in reflections, and attending additional regular meetings during her prep time.  Am. Compl. ¶ 29.  The teacher union filed a grievance on Plaintiff's behalf in response to the implemented plan of assistance.  Am. Compl. ¶ 31.  Plaintiff asserts that she "won" her grievance because her rating for the 2019-2020 school year should not have counted towards issuing the plan.  Am. Compl. ¶ 31.  Plaintiff alleges that, in response, the administration

4

continued to harass her with extra coaching sessions without justification. Am. Compl. ¶ 31. For example, she was the only teacher required to submit weekly lesson plans and attend extra meetings with administration. Am. Compl. ¶ 31. Plaintiff names six younger special education teachers in their thirties who were not put on plans of assistance. Am. Compl. ¶ 31. Plaintiff alleges that despite winning her grievance, and despite no justification to continue the plan of assistance, the administration continued to "place her under the microscope" of the plan, including additional meetings, reports, and paperwork. Am. Compl. ¶ 32.

Also in the fall of 2021, Plaintiff attended a union consultation committee meeting where the members addressed union concerns with the administration. Am. Compl. ¶ 30. At this meeting, Plaintiff again raised her concerns with respect to alleged ICT violations that were occurring at P.S. 85. Am. Compl. ¶ 30. Plaintiff alleges that the administration "denied" her concerns and stated they would "get back to [the teachers]." Am. Compl. ¶ 30. Plaintiff alleges that she "had a feeling retaliation would follow, but it did not feel right to not express [her] opinion about the practice." Am. Compl. ¶ 30. Plaintiff followed up with the administration again in the winter of 2021 and spring of 2022 about the IEP mandates of her students not being met. Am. Compl. ¶ 34.

Over the remaining course of the 2021-2022 school year, the administration continued to issue Plaintiff negative ratings during informal observations. Am. Compl. ¶¶ 35–36. Plaintiff's overall rating for the school year was "Developing," which is considered a "less-than-effective" rating. Am. Compl. ¶ 38. Conversely, Plaintiff's younger co-teacher, Durkin, received an "Overall Effective" rating from the administration for the year, even though Plaintiff and Durkin co-planned and co-taught each lesson. Am. Compl. ¶ 40.

Plaintiff was the oldest special education teacher on staff during the 2021-2022 school year, and the only teacher asked to give up her prep period on a regular basis to sit with the school's IEP teacher as a peer. Am. Compl. ¶ 33. Plaintiff alleges that in these meetings, the IEP teacher told

her that the administration asked Plaintiff to do certain things that other special education teachers were not asked to do, including writing detailed management plans with confidential IEP information about individual children on each plan for each subject matter.  Am. Compl. ¶ 33.  In addition, Plaintiff was the only special education teacher asked to monitor the progress of children on separate charts with additional paperwork.  Am. Compl. ¶ 33. Plaintiff alleges that the administration did not require her younger co-teachers to submit detailed management plans despite working in the same classes and with the same children as she did.  Am. Compl. ¶ 33.  Nor were any other staff who worked closely with special education children asked to write these "time-consuming detailed and repetitive management plans," including six teachers in their thirties whom Plaintiff identifies by name in the Complaint.  Am. Compl. ¶ 33.

***2022 – 2023 School Year***

At the beginning of the 2022-2023 school year, Plaintiff was again ineligible to apply for a per session opportunity in the ELT program because of her negative ratings from the prior school year.  Am. Compl. ¶ 44.  Plaintiff alleges that this once again caused a loss of compensation of approximately $7,922 in her gross pay for the 2022-2023 school year.  Am. Compl. ¶ 44.  Later that school year, Plaintiff was also unqualified to apply for a Special Education Recovery job posting because of her recent negative ratings imparted by Defendant Medina, despite previously working this program.  Am. Compl. ¶ 50.  Plaintiff had previously received approximately $1,500 in gross pay from this position.  Am. Compl. ¶ 50.

In September 2022, Plaintiff's grade and classroom were moved once again.  Am. Compl. ¶ 45.  This reassignment represented Plaintiff's fourth move in the span of two years, more than any other teacher at P.S. 85.  Am. Compl. ¶¶ 45–46.  The following month, Plaintiff was placed on a Teacher Improvement Plan ("TIP").  Am. Compl. ¶ 47.  Over the course of the 2022-2023 school year, Plaintiff's name was also omitted several times from staff mass-email announcements.  Am.

Compl. ¶ 49.  For instance, Plaintiff did not receive the ELT job posting email for the 2022-2023 school year, and a peer had to forward Plaintiff the posting.  Am. Compl. ¶ 49.

During this school year, Plaintiff was also subjected to various observations.  Am. Compl. ¶¶ 48, 51, 52.  For example, in December 2022, Plaintiff received an observation containing mostly negative "Developing" ratings.  Am. Compl. ¶ 48.  In response, Plaintiff filed an Annual Professional Performance Review ("APPR") complaint challenging this observation.  Am. Compl. ¶ 48.  In January 2023, while Plaintiff's younger co-teacher was absent, Plaintiff received an unannounced observation, which resulted in additional "Developing" and "Ineffective" ratings.  Am. Compl. ¶ 51.  Then, in June 2023, once again while Plaintiff's younger co-teacher was absent, Plaintiff received another unannounced observation while she was preparing her class to leave for a school trip.  Am. Compl. ¶ 52.  Plaintiff alleges these observations were unfair and inaccurate observations of her performance, because without her co-teacher present, normal lessons were more difficult to conduct.  Am. Compl. ¶ 52.

### *Alleged Culture of Age Discrimination at P.S. 85*

Plaintiff ultimately believes that she has been targeted with negative observation reports, numerous different teaching assignments, additional burdensome tasks, and an unwarranted plan of assistance and TIP, all due to her age and protected complaints of discrimination.  Am. Compl. ¶ 53.  Plaintiff alleges that in addition to the negative treatment to which she has personally been subjected, the administration has treated other senior teachers in a disparate fashion in comparison to their younger counterparts.  Am. Compl. ¶ 41.  Plaintiff names six senior teachers, over the age of 50, who were all allegedly "targeted by the administration."  Am. Compl. ¶ 41.

In sum, Plaintiff alleges that these six named teachers received lower observation reports and ratings, as well as disciplinary letters to file, after Defendant Medina assumed leadership of P.S. 85.  Am. Compl. ¶ 41.  As alleged, because of this discriminatory behavior, several of these

senior teachers retired or resigned.  Am. Compl. ¶ 41.  Plaintiff alleges that, in contrast, younger teachers were not observed as frequently, received their teaching preferences, and were not required to do additional work regarding their IEPs.  Am. Compl. ¶ 41.

## PROCEDURAL HISTORY

On June 10, 2022, Plaintiff filed a dual charge of employment discrimination with the New York State Division of Human Rights ("SDHR") and Equal Employment Opportunity Commission ("EEOC").  Am. Compl. ¶ 43.  The EEOC issued a right to sue letter, Am. Compl. ¶ 43, and Plaintiff timely filed this action within 90 days of receiving the letter.  [ECF No. 1].  She subsequently filed an Amended Complaint ("the Complaint") with leave of the Court.  [ECF No. 19].  The Complaint asserts various claims, all against both DOE and the Individual Defendants, including: (1) age discrimination in violation of the ADEA, NYSHRL, and NYCHRL, including discriminatory failure to promote; (2) hostile work environment in violation of the ADEA, NYSHRL, and NYCHRL; (3) retaliation based on age in violation of the ADEA, NYSHRL, and NYCHRL; and (4) retaliation for advocating on behalf of Plaintiff's special education students in violation of the Rehabilitation Act.  Am. Compl., pp. 4–5.

Defendants now move to partially dismiss.[2]  *See* Motion to Dismiss [ECF Nos. 23, 24]; Memorandum of Law [ECF No. 24] ("Def. Mem.").  Plaintiff opposed the motion.  *See* Memorandum of Law in Opposition to Motion to Dismiss [ECF No. 26] ("Pl. Opp.").  Defendants replied.  *See* Reply Memorandum of Law [ECF No. 28] ("Def. Reply").

## LEGAL STANDARD

The Court is obliged to construe a *pro se* complaint liberally and interpret it to raise the "strongest arguments that it *suggests*."  *Costabile v. New York City Health & Hosps. Corp.*, 951

---

[2] Except with respect to issues of timeliness, Defendants do not move to dismiss Plaintiff's discrimination and hostile work environment claims under the NYCHRL against the Individual Defendants.  *See* Def. Reply at 1 n.1.

F.3d 77, 80 (2d Cir. 2020).  But the "special solicitude" afforded in *pro se* cases has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.  *Shomo v. State of New York*, 374 F. App'x 180, 183 (2d Cir. 2010).

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct and draw all reasonable inferences in favor of Plaintiff where Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6). *Iqbal*, 556 U.S. at 678. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id*. at 678–79.  But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555.  After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the plaintiff is entitled to relief.  *Id.*

## DISCUSSION

### I.     INDIVIDUAL LIABILITY

#### A.    Plaintiff Concedes That Individual Defendants Are Not Liable Under the ADEA or the Rehabilitation Act.

The Second Circuit has held that neither the ADEA nor the Rehabilitation Act subjects individuals, even those with supervisory liability over the plaintiff, to personal liability. *See e.g.*, *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (ADEA); *Goe v. Zucker*, 43 F.4th 19, 35 (2d Cir. 2022), *cert. denied sub nom. Goe v. McDonald*, 143 S. Ct. 1020, 215 L. Ed. 2d 188 (2023) (Rehabilitation Act).  Plaintiff expressly concedes that she "do[es] not dispute that individually

named defendants are not liable under the ADEA or the Rehabilitation Act."  Pl. Opp. at 5. Accordingly, all ADEA and Rehabilitation Act claims against the Individual Defendants are hereby dismissed.

> ### B. Individual Defendants Are Subject to Liability Under the NYSHRL.

The Individual Defendants do not contest that they are proper defendants under the NYCHRL.[3]  Nor do they dispute that they fare potential liability under the NYSHRL with respect to Plaintiff's retaliation claims.[4]  The Individual Defendants do, however, argue that because they are mere employees of DOE, and not "employers" under the NYSHRL, Plaintiff's state discrimination and hostile work environment claims against them should be dismissed. Def. Br. at 8.

Historically, under the NYSHRL, liability for employment discrimination could be imposed on an individual "if the individual qualifie[d] as an 'employer.' " *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012); *see also Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012).  However, in *Doe v. Bloomberg, L.P.*, the New York Court of Appeals ruled that the NYSHRL "does not render employees liable as individual employers."  36 N.Y.3d 450, 458, 167 N.E.3d 454, 459 (2021).  "Rather, those individuals may incur liability only for their own discriminatory conduct, for aiding and abetting such conduct by others, or for retaliation against protected conduct."  167 N.E.3d at 460.

---

[3] The NYCHRL provides an even broader basis for direct individual liability than the NYSHRL.  *See e.g.*, Malena v. *Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012).  The NYCHRL makes it unlawful for "an employer *or an employee or agent thereof*, because of the actual or perceived . . . age . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."  NYCHRL § 8–107(1)(a) (emphasis added).  Hence, Defendants do not contest individual liability under the NYCHRL.

[4] The anti-retaliation provision of the NYSHRL provides for suit against "any person" and so does allow for personal liability. N.Y. Exec. Law § 296(7).  Accordingly, Defendants do not appear to contest individual liability with respect to Plaintiff's retaliation claim under the NYSHRL.

Many courts in the Second Circuit have extended *Doe's* reasoning, and its' aiding-and-abetting liability theory, to the public employment context. *See e.g.*, *Kent-Friedman v. New York State Ins. Fund*, No. 18-CV-4422 (VM), 2023 WL 6292693 (S.D.N.Y. 2023) (citing *Doe* to hold that individual New York State Insurance Fund employees "may incur liability [under the NYSRHL] . . . for aiding and abetting such conduct by others"); *Baptiste v. City Univ. of New York*, No. 22-CV-2785 (JMF), 2023 WL 4266914, at *4 (S.D.N.Y. 2023) (finding individual defendants employed by the City College of New York "[could not] be held individually liable under the NYSHRL . . . [but could] be held liable under the state statute [] on an aider-and-abettor theory"); *Bonaffini v. CUNY*, No. 20-CV-5118, 2021 WL 2895688 (E.D.N.Y. 2021).

While Plaintiff does not expressly invoke the aider-and-abettor theory in her Complaint, the Court is mindful that Plaintiff is *pro se*, and interprets her allegations to raise the "strongest [claims] that [they] suggest." *Costabile*, 951 F.3d at 80. The Complaint contains an abundance of allegations which allege that the Individual Defendants directly engaged in their "own discriminatory conduct." *See e.g.*, Am. Compl. ¶ 18 ("Principal Medina denied my teaching preference for an ICT class and assigned me to teach a general education class"); Am. Compl. ¶ 19 ("AP Krenn gave me mostly Developing ratings for an informal observation in mathematics"); Am. Compl. ¶ 20 ("AP Kurppe rated me Developing in two of the areas"); Am. Compl. ¶ 25 ("I advised Principal Medina and AP Sorboro that I felt excluded and hurt, but they did not add my name to the bulletin board"). Moreover, Plaintiff alleges discrimination and hostile work environment claims under the NYSHRL against DOE, her "employer" and would-be principal violator. *Compare with Kent-Friedman*, 2023 WL 6292693, at *9 (finding plaintiff could not establish aiding-and-abetting liability against individual defendants as a matter of law "because there is no NY[S]HRL claim against the principal").

Given the above, the Court concludes as an initial matter that the Individual Defendants

can be held liable under the NYSHRL for Plaintiff's discrimination and hostile work environment claims on an "aider-and-abettor theory," and will return to those claims when the Court evaluates Plaintiff's claims on the merits.

## II.   NOTICE OF CLAIM REQUIREMENT

Defendants next argue that Plaintiff's NYSHRL and NYCHRL claims against DOE are barred for failure to file a notice of claim as required by state law.[5]  Def. Br. at 5.  Section 3813(1) of the New York Education Law requires a plaintiff to serve a notice of claim prior to the commencement of an action against the DOE or its officers within ninety days after the claim arises.  *See* New York Education Law § 3813(1).  "[T]he failure to serve the proper public body with a notice of claim is a *fatal* defect *mandating* dismissal of th[e] action."  *Bagarozzi v. New York City Dep't of Educ.*, No. 18-CV-4893 (RA), 2019 WL 1454316, at *3 (S.D.N.Y. Mar. 31, 2019) (emphasis added) (quoting *Wesley–Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 411 (S.D.N.Y. 2013)) (internal quotation marks omitted); *see also Varsity Transit, Inc. v. Bd. of Educ. of City of New York*, 5 N.Y.3d 532, 536, 840 N.E.2d 569, 571 (2005) ("We have repeatedly rejected, and now reject again, proposals to compromise the strict statutory notice of claim requirement[.]"); *Glascoe v. Solomon*, No. 18-CV-8284 (AT), 2020 WL 1272120, at *10 (S.D.N.Y. Mar. 17, 2020) (dismissing *pro se* plaintiff's NYSHRL and NYCHRL claims where she "failed to plead that she filed a notice of claim, and there is no notice of claim on file with the New York State Comptroller's Office.").

Pursuant to Section 3813(1), DOE was entitled to a notice of claim before Plaintiff could commence her action in federal court, and Plaintiff concedes she did not file such notice.  Pl. Opp. at 2–3.  Instead, Plaintiff argues that she "complie[d] with the [Section] 3813(1) notice requirement

---

[5] Defendants do not argue that such notices of claim have any bearing on Plaintiff's federal claims or claims against the Individual Defendants.  Def. Br. at 5.

by filing a timely EEOC charge" and "a charge of discrimination with the SDHR."  Pl. Opp. at 3. The Second Circuit has not ruled on whether a NYSHRL claim against a school district requires a notice of claim.  *Berrie v. Bd. of Educ. of Port Chester-Rye Union Free Sch. Dist.*, No. 14-CV-6416 (CS), 2017 WL 2374363, at *8 (S.D.N.Y. May 31, 2017), *aff'd*, 750 F. App'x 41 (2d Cir. 2018).  "Although some courts have held that filing an EEOC or SDHR complaint may satisfy the notice of claim requirement, the plaintiff must still plausibly allege that the administrative complaint met § 3813's requirements."  *Bagarozzi*, 2019 WL 1454316, at *4 (internal citations omitted).  Courts in this District have held that an EEOC or SDHR charge can suffice as a substitute for a notice of claim in limited circumstances where "the charge puts the school district on notice of the precise claims alleged, is served on the governing board of the district (and not a different arm of the district), and is served within the statutory time period."  *Legrá v. Bd. of Educ. of the City Sch. Dist. of the City of New York*, No. 14-CV-9245 (JGK), 2016 WL 6102369, at *3 (S.D.N.Y. Oct. 19, 2016); *see also Verne v. New York City Dep't of Educ.*, No. 21-CV-5427 (JPC), 2022 WL 4626533, at *5 (S.D.N.Y. Sept. 30, 2022); *Berrie*, 2017 WL 2374363, at *8 ("[T]he [notice] requirement is met by any document sufficiently formal and detailed for the District to investigate the claims.").

While an EEOC or SDHR complaint may satisfy the notice of claim requirement, "[P]laintiff must still plausibly allege that the administrative complaint met [Section] 3813's requirements."  *Bagarozzi*, 2019 WL 1454316, at *4.  Here, Plaintiff alleges that she filed a complaint against Defendants with the EEOC and SDHR on June 10, 2022, complaining of "age discrimination and hostile work environment" and "mentioned that [she] was being retaliated against for complaining to the school's administration about students not having their IEPs met."  Am. Compl. ¶ 42.  Nothing in the Complaint, however, alleges that these complaints provided "notice of the precise claims alleged" in *this* action.  For example, this action contains age

retaliation claims, which Plaintiff does not allege were included in the SDHR or EEOC notice. And Plaintiff's allegations in the Complaint do not provide any insight into the specific allegations contained in her SDHR or EEOC charges, which could suggest a plausible inference that those charges "put[] the school district on notice of the precise claims alleged" here. *Legrá*, 2016 WL 6102369, at *3. Plaintiff's sole, and unspecific, allegation that she filed a complaint with the SDHR "alleging age discrimination and hostile work environment" and "mentioned that [she] was being retaliated against" cannot suffice as a substitute for a notice of claim. *Berrie*, 2017 WL 2374363, at *8 ("[T]he [notice] requirement is met by any document *sufficiently . . . detailed* for the District to investigate the claims.") (emphasis added).[6]

Because Plaintiff has failed to allege that she provided the specific details of her grievance in the SDHR charge, she fails to satisfy Section 3813(1)'s notice of claim requirement, and her state and municipal claims against the DOE are procedurally barred. *Bagarozzi*, 2019 WL 1454316, at *4 (holding plaintiff's EEOC and SDHR did not satisfy notice of claim requirement because she alleged only the date that she filed the charges); *see also Legrá*, 2016 WL 6102369, at *3 (holding plaintiff's EEOC did not satisfy notice of claim requirement because she "d[id] not allege that the EEOC charge provided the require notice" to defendants); *Verne*, 2022 WL 4626533, at *5 (holding plaintiff's EEOC and SDHR did not satisfy notice of claim requirement because she did not allege "even the contents of those complaints").

## III.   STATUTE OF LIMITATIONS

Defendants further argue that Plaintiff's claims under the Rehabilitation Act, ADEA, NYSHRL, and NYCHRL are partially time barred.[7]  Def. Mem. 6–7.

---

[6] The Court further notes that Plaintiff did not attach her SDHR or EEOC charges as exhibits to her Complaint in this action, which would have allowed the Court to review the charges to determine whether they sufficiently put Defendants on notice of a "written verified claim upon which such action or special proceeding is founded." N.Y. Educ. Law § 3813(1).

[7] As Plaintiff correctly notes, Pl. Opp. at 4, Defendants do not dispute that Plaintiff filed timely claims within the

A. <u>ADEA Claims</u>

Under the ADEA, a plaintiff must file an administrative charge with the EEOC or equivalent local agency within 300 days of the date of injury. *See Gindi v. New York City Dep't of Educ.*, 786 F. App'x 280, 282 (2d Cir. 2019). Plaintiff filed a dual EEOC and SDHR charge on June 10, 2022, *see* Am. Compl. at ¶ 42, therefore, claims relating to any allegations of injury which occurred more than 300 days prior to that date, *i.e.*, August 14, 2021 are time-barred for purposes of Plaintiff's ADEA claims.[8]

Plaintiff argues that the "continuing violation" doctrine should apply, allowing redress for events occurring before the 300-day time frame. Pl. Opp. at 4. "The continuing violation doctrine states that when 'a plaintiff has experienced a continuous practice and policy of discrimination . . . commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.' " *Pattanayak v. Mastercard Inc.*, No. 21-CV-2657, 2022 WL 564047, at *3 (S.D.N.Y. Feb. 24, 2022) (quoting *Washington v. County at Rockland*, 373 F.3d 310, 317 (2d. Cir. 2004)); *Staten v. City of New York*, 726 F. App'x 40, 43 (2d Cir. 2018) (finding that the "continuing violation" doctrine can apply to ADEA claims). The Supreme Court has held, however, that this doctrine does not apply to discrete employment actions, including "termination, failure to promote, [or] denial of transfer," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002), even if "the *effect* . . . continues to be felt by the employee for as long as [s]he remains employed." *Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 302 (S.D.N.Y. 2016) (emphasis

---

statute of limitations period, but only that certain allegations in the Complaint are outside the statute of limitations and therefore cannot support Plaintiff's claims.

[8] Plaintiff briefly argues that "discriminatory adverse actions that occurred before August 14, 2021, provide relevant background evidence to [her] timely claims." Pl. Opp. at 4 (citing *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019). While true, *Davis-Garett* discussed time-barred allegations as background evidence in the context of otherwise timely claims at the summary judgment stage. *Id.* However, claims predicated solely on such allegations are time-barred *as a matter of law.*

in original) (cleaned up); *see also Staten*, 726 F. App'x at 43 (in the ADEA context, the continuing violation doctrine does not apply to discrete employment actions, such as termination, failure to promote, or denial of transfer).

Plaintiff's ADEA discrimination and retaliation claims are based on discrete acts, including receiving negative observation reports (Am. Compl. ¶¶ 48, 51, 52), more frequent teaching reassignments (Am. Compl. ¶¶ 45–46), burdensome tasks (Am. Compl. ¶ 33), and an unwarranted plan of assistance and TIP (Am. Compl. ¶¶ 29, 47). None of these constitute "acts of a continuing nature" and are not actionable under the "continuing violation" doctrine. *See e.g.*, *Tassy v. Buttigieg*, 51 F.4th 521, 530 (2d Cir. 2022) (finding "decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities" as discrete acts); *see also Morgan*, 536 U.S. at 114–15 (recognizing that an employee's allegations that he was "denied training" on more than one occasion were "discrete discriminatory act[s]"); *DeAngelo v. MAXIMUS/NY Medicaid Choice*, No. 19-CV-7957 (CS), 2022 WL 3043665, at *12 (S.D.N.Y. Aug. 2, 2022) (discrete acts such as placing plaintiff on leaves of absences, declining to schedule meetings with plaintiff, giving her "urgent" assignments before surgery, and her eventual termination not actionable under the "continuing violation" doctrine). In considering the timeliness of discrete act claims, the Second Circuit has held that each actionable discrete act " 'occur[s]' on the day that it 'happened.' " *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015) (quoting *Morgan*, 536 U.S. at 110–11). Accordingly, any allegations arising prior to August 14, 2021 are time-barred for purposes of Plaintiff's ADEA discrimination and retaliation claims.

But the "continuing violations" doctrine must be analyzed separately in relation to Plaintiff's ADEA hostile work environment claim. *Morgan*, 536 U.S. at 115. Hostile work environment claims, unlike discrimination claims, are "composed of a series of separate acts that

collectively constitute one unlawful employment practice." *Morgan*, 536 U.S. at 117 (cleaned up). If any one act contributing to the claim occurs within the applicable time frame, then the Court may consider acts that on their own would have been time barred, as long as at least one alleged act occurred within the prescribed time frame. *Id*. But if the acts outside the relevant time frame are unrelated to the acts within the time frame, the employee cannot allege the prior acts as part of the same hostile work environment claim. *Id*. at 118.

It is unclear from the face of the Complaint exactly which allegations are in relation to Plaintiff's hostile work environment claims. However, mindful that Plaintiff is *pro se*, and interpreting her allegations to raise the "strongest arguments that [they] *suggest*," *Costabile*, 951 F.3d at 80, many of the allegations that took place during the 2021-2022 school year could be reasonably interpreted to relate to her hostile work environment claims. *See e.g.*, Am. Compl. ¶ 29 (despite Plaintiff's overall effective ratings for years, she was assigned a plan of assistance); Am. Compl. ¶ 29 (Plaintiff was the only teacher assigned excessive paperwork, additional meetings, and weekly lesson plans); Am. Compl. ¶¶ 27–28 (Plaintiff was issued negative observation ratings, while her younger co-teacher was not). Plaintiff's timely allegations regarding the 2021-2022 school year "involve the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers" as other allegations that, on their own would have been time barred. *Morgan*, 536 U.S. at 120. Accordingly, the Court may consider all Plaintiff's allegations as part of her hostile work environment claim under the "continuing violation" doctrine. *Id*.

### B.   NYSHRL and NYCHRL Claims

Although the Court dismissed Plaintiff's NYSHRL and NYCHRL claims against DOE for failure to comply with the notice requirement in Section 3813(1), *see supra* at Section II.A, Plaintiff's state and municipal claims against the Individual Defendants are subject to a three-year

statute of limitations from the date on which the cause of action accrued.  *See Rehman v. State Univ. of N.Y.*, 596 F. Supp. 2d 643, 651 (2d Cir. 2005).  Plaintiff filed this action on January 31, 2023.  [ECF No. 1].  Therefore, absent some basis for tolling the statute of limitations, her NYSHRL and NYCHRL claims are time-barred to the extent they are based on discriminatory or retaliatory acts occurring before January 31, 2020.[9]

As a threshold matter, Plaintiff argues her NYSHRL and NYCHRL claims should be tolled since the date she filed her EEOC charge.  Pl. Opp. at 4–5.  The Second Circuit has not yet determined whether the filing of an EEOC charge tolls the statute of limitations for discrimination claims.  *See Shojae v. Harlem Hosp. Ctr.*, 764 F. App'x 113, 114 n.2 (2d Cir. 2019) (summary order) ("We have not resolved whether the statute of limitations under the [NYSHRL] and [NYCHRL] is tolled while a complaint is pending with the [EEOC].").  The Second Circuit has held that "filing an EEOC charge does not toll the limitations period for state-law *tort* claims, even if those claims arise out of the same factual circumstances as the discrimination alleged in the EEOC charge."  *Castagna v. Luceno*, 744 F.3d 254, 255 (2d Cir. 2014).  The recent trend in this District, however, is that the *Castagna* holding does *not* extend to NYSHRL and NYCHRL claims, such that the filing of an EEOC *does* toll the statute of limitations for state law discrimination claims.  *See e.g.*, *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 447 (S.D.N.Y. 2023); *Esposito v. Deutsche Bank AG*, No. 07-CV-6722, 2008 WL 5233590, at *5 (S.D.N.Y. Dec. 16, 2008) (collecting cases).

---

[9] Plaintiff's NYSHRL and NYCHRL *hostile work environment* claims are not time-barred because "[a] continuing violation doctrine applies to NYSHRL claims and is coterminous with the scope of the continuing violation doctrine that applies to federal civil rights claims."  *Cruz v. City of N.Y.*, No. 21-CV-1999, 2021 WL 5605139, at *5 (S.D.N.Y. Nov. 30, 2021) (citing *Mira v. Harder (Evans)*, 177 A.D.3d 426, 113 N.Y.S.3d 44, 45 (1st Dep't. 2019); *see also DeAngelo*, 2022 WL 3043665, at *12.  Because the Court found, pursuant to the "continuing violation" doctrine, that Plaintiff's ADEA hostile work environment claim was not time-barred, neither are her NYSHRL and NYCHRL hostile work environment claims.  Thus, the Court only addresses Defendants' statute of limitations argument with respect to Plaintiff's claims of discrimination and retaliation under the NYSHRL and NYCHRL.

Giving Plaintiff the benefit of that rule, claims supported by any allegations occurring after June 10, 2019 are timely, since Plaintiff filed an EEOC charge on June 10, 2022. *See* Am. Compl. at ¶ 4; *Kirkland-Hudson*, 665 F. Supp.3d at 447 ("[T]his Court holds that the filing of the EEOC charge on June 2, 2020, tolled [p]laintiff's NYSHRL claims and accordingly, any allegations occurring after June 2, 2017 are timely."). It appears that all of Plaintiff's allegations relate to events after June 10, 2019, Am. Compl. ¶ 6, and as such, Plaintiff's NYSHRL and NYCHRL claims for discrimination and retaliation are not time-barred.

### C.  Rehabilitation Act Claims

"[F]iling a grievance with the EEOC does not toll the statute of limitations as to [Rehabilitation Act] claims." *DeAngelo*, 2022 WL 3043665, at *12; *Stropkay v. Garden City Union Free Sch. Dist.*, 593 F. App'x 37, 41 (2d Cir. 2014). Instead, Rehabilitation Act claims are subject to a three-year statute of limitations. *Stropkay*, 593 F. App'x at 41. Plaintiff alleges she made complaints on behalf of her special education students in September 2019 (Am. Compl. ¶ 7), November 19, 2021 (Am. Compl. ¶ 30), December 10, 2021 (Am. Compl. ¶ 34), and March 25, 2022 (Am. Compl. ¶ 34).[10] Defendants do not appear to contest, nor can they, that Plaintiff's claims with respect to her November 2021, December 2021, or March 2022 complaints are timely under the Rehabilitation Act. Def. Br. at 6 ("[A]ll claims which accrued *prior to January 31, 2020* would be time barred [under the Rehabilitation Act].") (emphasis added).

The sole question for the Court then is whether the continuing violation doctrine applies to Plaintiff's September 2019 complaint on behalf of her students, such that it would not be time-barred. *See Harris v. City of N.Y.*, 186 F.3d 243, 248 (2d Cir. 1999) (applying the continuing

---

[10] Defendants correctly concede that "complaints made by teachers on behalf of their special education students constitutes protected activity for purposes of the [Rehabilitation Act]." Def. Br. at 16; *see Mitchell v. New York City Dep't of Educ. & Daisy Fontanez*, No. 20-CV-1555 (PGG) (SLC), 2022 WL 21778421, at *10 (S.D.N.Y. Dec. 12, 2022) (collecting cases).

violations doctrine to Rehabilitation Act claims).  Although the continuing violation doctrine first arose in the Title VII context, the Second Circuit has subsequently applied the doctrine to the ADEA, as discussed above.  *See Staten*, 726 F. App'x at 43.  While some Circuit courts have similarly applied the continuing violations doctrine to Rehabilitation Act claims,[11] the Court is unaware of any Second Circuit cases which have explicitly found that the doctrine applies to Rehabilitation Act claims.  Nevertheless, many district courts within the Second Circuit have assumed that the doctrine does, indeed, apply in the Rehabilitation Act context.  *See e.g.*, *Am. Council of Blind of New York, Inc. v. City of New York*, 495 F. Supp. 3d 211, 246 (S.D.N.Y. 2020); *Stamm v. New York City Transit Auth.*, No. 04-CV-2163 (SLT), 2013 WL 244793, at *8 (E.D.N.Y. Jan. 22, 2013); *Marinelli v. Chao*, 222 F. Supp. 2d 402, 410 (S.D.N.Y. 2002).

Even if, however, the Court were to assume that the continuing violation doctrine *does* apply to Rehabilitation Act claims, it would still be inapplicable here.  *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir.2009) ("[t]he continuing violation doctrine is an *exception*" to the normal accrual date) (emphasis added)).  Under *Morgan*, Plaintiff's September 2019 complaint is a "discrete act, which falls outside the limitations period" and, therefore, "cannot be brought within it, even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period."  *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 157 (2d Cir. 2012).  As a result, the "continuing violation" doctrine does not apply to Plaintiff's retaliation claim under the Rehabilitation Act, and any claims that accrued prior to January 31, 2020 are time-barred.

---

[11] *See e.g.*, *Cherosky v. Henderson*, 330 F.3d 1243 (9th Cir. 2003) (applying continuing violation doctrine to Rehabilitation Act claim); *Adams v. D.C.*, 740 F. Supp. 2d 173, 184 (D.D.C. 2010), *aff'd in part*, 618 F. App'x 1 (D.C. Cir. 2015) (applying continuing violation doctrine to Rehabilitation Act hostile work environment claim).

## IV.    AGE DISCRIMINATION CLAIMS

Defendants also argue that certain of Plaintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  Specifically, Defendants challenge the sufficiency of Plaintiff's claims for age discrimination claims, including discriminatory failure to promote, under the ADEA, the NYSHRL, and the NYCHRL.

As an initial matter, Defendants address Plaintiff's discriminatory failure-to-promote and discrimination claims separately.  Def. Br. 10, 11.  Indeed, Plaintiff checked off "did not promote me" under "Adverse Employment Action" in the Court's *pro se* complaint template.  Am. Compl. at 5.  Defendants are correct that to establish discrimination based on failure to promote, Plaintiff "must demonstrate that: '(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications."  *Estate of Hamilton v. City of New York*, 627 F.3d 50, 55 (2d Cir. 2010) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004)).  Defendants argue that "Plaintiff has not alleged that she applied for any open positions at all, let alone who received the position at question instead of her, or, alternatively, that any such position remained unfilled."  Def. Br. at 11.  While the Court agrees that Plaintiff's allegations do not sufficiently make out a claim for discriminatory failure to promote, courts in this Circuit "have found that a plaintiff's inability to pursue per session work as a result of poor performance reviews rises to the level of an adverse employment action" for purposes of discrimination claims.  *Zoulas v. New York City Dep't of Educ.*, 400 F. Supp. 3d 25, 54 (S.D.N.Y. 2019); *see also Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 470 (S.D.N.Y. 2013); *Shapiro v. New York City Dep't of Educ.*, 561 F. Supp. 2d 413, 423 (S.D.N.Y. 2008).  Therefore, the Court interprets Plaintiff's allegations that she was ineligible to apply for various per session positions because of negative observation ratings, *see* Am. Compl.

at ¶¶ 22, 44, 50, as part of her age discrimination claims.

Under the ADEA, it is unlawful for an employer to "discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623 (a)(1). "A *prima facie* case of age discrimination requires that plaintiff[] demonstrate membership in a protected class, qualification for their position, an adverse employment action, and circumstances that support an inference of age discrimination." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). "But at the motion to dismiss stage, an ADEA plaintiff need not plead every element of a *prima facie* case, only facts which plausibly suggest that (1) the employer took an adverse action and (2) age was the "but for" cause of that adverse action." *Boonmalert v. City of New York*, 721 F. App'x 29, 32 (2d Cir. 2018). The Second Circuit has "assumed without deciding that 'but-for' causation is also required under the NYSHRL." *Id.* (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105 n.6 (2d Cir. 2010)).[12]

A. <u>Adverse Employment Action</u>

Defendants argue that Plaintiff fails to state an age discrimination claim under the ADEA and NYSHRL.[13] First, Defendants concede that Plaintiff's inability to pursue per session work because of negative observation reviews that she received, *see* Am. Compl. at ¶¶ 22, 44, 50, rises to the level of an adverse employment action for purposes of discrimination claims. Def. Reply at 5. Defendants contend, however, that "[t]hough Plaintiff alleges many [other] acts of which she is unhappy, most of those acts do not, in of themselves, rise to the level of being an 'adverse action' under either the ADEA or the [NY]SHRL." Def. Br. at 12. The Court disagrees.

"A plaintiff sustains an adverse employment action if he or she endures a materially adverse

---

[12] The issue has not been definitively resolved in the New York courts. *Boonmalert*, 721 F. App'x at 32 (citing *DeKenipp v. State*, 97 A.D.3d 1068, 949 N.Y.S.2d 279, 282 (2012)).

[13] Defendants do not move to dismiss Plaintiff's age discrimination claim under the NYCHRL. *See* Def. Br. at 11.

*change* in the terms and conditions of employment." *Kassner*, 496 F.3d at 238 (internal citations and quotation marks omitted). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Galabya v. NY City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000); *see also Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir. 2015) (holding similarly). " 'Moreover, while there is no exhaustive list of what constitutes an adverse employment action, courts have also held that denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee, among other things, constitute adverse employment actions' under certain circumstances." *Kirkland-Hudson*, 665 F. Supp. 3d at 450 (quoting *Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013)) (quotation marks and citation omitted).

Indeed, Plaintiff's allegations that she received "lower observation reports and ratings" compared to younger employees and that she was placed on a plan of assistance (Am. Compl. ¶¶ 29, 47, 53) in and of themselves may not constitute adverse employment actions. Am. Compl. ¶ 41. However, the Second Circuit and courts within the Second Circuit have acknowledged that many negative personnel actions taken by employers may constitute adverse employment actions sufficient to establish a *prima facie* case of employment discrimination *when they affect the terms and conditions of employment*. *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 453 (S.D.N.Y. 2023) (emphasis added); *see also Sanders v. N.Y. City Hum. Res. Admin.*, 361 F.3d 749, 756 (2d Cir. 2004) (holding that negative performance evaluation did not constitute an adverse employment action where the plaintiff "offered no proof that this evaluation had any

effect on the terms and conditions of her employment"); *Clarke v. New York City Dep't of Educ.*, No. 18-CV-06783 (AMD), 2021 WL 123358, at *5 (E.D.N.Y. Jan. 13, 2021) (finding teacher placed on performance improvement plan was not adverse action where there was no materially adverse change to the terms and conditions of her employment). Here, Plaintiff sufficiently alleges that the various negative evaluations "affect[ed] the terms and conditions of [her] employment," *Kirkland-Hudson*, 665 F. Supp. 3d at 453, in that they made her ineligible to apply for a per session opportunity in the ELT program several years in a row and a Special Education Recovery job, despite previously holding both positions. Am. Compl. ¶¶ 22, 44, 50.

Moreover, the Second Circuit has "held that the assignment of an excessive workload" as a result of "discriminatory intent, can be an adverse employment action," because it is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega*, 801 at 89 (citation and quotation marks omitted). Thus, when an assigned workload is "disproportionately heavy" it can constitute an adverse employment action. *Id*. at 85 (citing *Feingold v. N.Y.*, 366 F.3d 138, 153 (2d Cir. 2004) (holding that a trier of fact could conclude that an Administrative Law Judge was subject to disparate treatment crediting his allegations that he was assigned a heavier docket of cases as a result of discriminatory intent)).

Here, Plaintiff specifically alleges that despite her overall effective ratings for years, she was assigned a plan of assistance, which resulted in excessive paperwork, writing lesson plans weekly, putting in reflections, and attending additional meetings during her prep time. Am. Compl. ¶ 29. Moreover, Plaintiff alleges that she was the only teacher asked to give up her prep period on a regular basis to sit with the school's IEP teacher, and during these meetings, she was asked to do certain tasks that other special education teachers were not asked to do, such as writing detailed management plans. Am. Compl. ¶ 33. Plaintiff also alleges she was the only special education teacher asked to monitor the progress of children on separate charts with additional paperwork.

24

Am. Compl. ¶ 33.  Under *Vega*, Plaintiff's allegations that she received a disproportionately heavy workload plausibly state an adverse employment action.  *Vega*, 801 F.3d at 89.

Additionally, Plaintiff's allegations that she was repeatedly reassigned to less desirable classrooms than younger special education teachers may plausibly allege an adverse employment action.  *Compare Kassner*, 496 F.3d at 238 ("We decline to hold that a waiter or waitress repeatedly assigned to less desirable work stations and work shifts than younger wait-staff can never, under any proven set of facts, obtain a remedy for age discrimination in employment."); *Kirkland-Hudson*, 665 F. Supp. 3d at 450 (holding "involuntary transfer that entails objectively inferior working conditions . . . constitute[s] adverse employment action[] under certain circumstances").

### B.  But-for Causation

Defendants argue that, even if the Court were to find that Plaintiff sufficiently alleged an adverse employment action, she fails to plead the required causation.  For ADEA claims, a plaintiff must plead that age was the "but for" cause of the adverse action.  *Boonmalert*, 721 F. App'x at 32.  The Second Circuit has "assumed without deciding that 'but-for' causation is also required under the NYSHRL."  *Id.* (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 105 n.6 (2d Cir. 2010)).[14]  Nevertheless, the plaintiff need only "plead facts that give 'plausible support to a minimal inference' of the requisite discriminatory causality."  *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 32 (2d Cir. 2016) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 310–11 (2d Cir. 2015)).  In other words, "a plaintiff must supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of the 'conceivable' to the 'plausible.' "  *Marcus*, 661 F. App'x at 32.  "A showing that the employer treated a similarly situated employee differently is 'a common and especially effective method' of establishing a

---

[14] The issue has not been definitively resolved in the New York courts.  *Boonmalert*, 721 F. App'x at 32 (citing *DeKenipp v. State*, 97 A.D.3d 1068, 949 N.Y.S.2d 279, 282 (2012)).

*prima facie* case of discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001)

(quoting *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001)).

Here, Plaintiff plausibly alleges that her inability to pursue per session work would not

have occurred "but-for" her age. Def. Reply at 5. Plaintiff alleges that the reason she was ineligible

to apply for per session work in the 2021-2022 and 2022-2023 school years was "due to [her]

unwarranted Developing [Measures of Teacher Practice ("MOTP") score] for the prior year[s]."

Am. Compl. ¶¶ 22, 44. Plaintiff further alleges that "*only older teachers*, such as Susan Parks,

Jose Ojeda, and I" received poor ratings for the 2020-2021 school year. Am. Compl. ¶ 21. For the

2021-2022 school year, Plaintiff's younger co-teacher received an "Overall Effective" rating,

while Plaintiff received less-than-effective ratings, "even though [they] co-planned and co-taught

each lesson for the 2021-22 school year." Am. Compl. ¶ 40. The Court finds that, at the motion

to dismiss stage, these allegations give rise to a plausible inference that "but-for" her age Plaintiff

would not have received negative observation reviews, and thus, would not have suffered adverse

employment action such as ineligibility to pursue per session work.

Similarly, Plaintiff plausibly alleges that she would not have received a disproportionately

heavy workload "but-for" her age. Plaintiff alleges that as the "oldest special education teacher

on staff," "administration asked [her] to do certain things that other [younger] special education

teachers were not asked to do, including writing detailed management plans with confidential IEP

information about individual children on each plan for each subject matter." Am. Compl. ¶ 33.

Plaintiff alleges that the administration did not require her named, younger co-teachers to submit

these detailed management plans *despite working in the same classes and with the same children

as she did*. Am. Compl. ¶ 33. Plaintiff then provides the names of six younger teachers who were

also not required to write management plans. Am. Compl. ¶ 33. These allegations also give rise

to a plausible inference that "but-for" her age Plaintiff would not have received a

disproportionately heavy workload.

Moreover, Plaintiff's allegations that she was repeatedly reassigned to less desirable classrooms than younger special education teachers plausibly allege "but-for" causation. As the oldest teacher at P.S. 85, Plaintiff was forced to teach her special education class in a separate building, in isolation from the other, younger kindergarten teachers. Am. Compl. ¶ 10. Plaintiff was denied her class preference—multiple times—in favor of *younger teachers* with *less seniority*. Am. Compl. ¶¶ 14, 18. Additionally, Plaintiff was reassigned four times in two years, which was more than any other (younger) teacher at her school. Am. Compl. ¶¶ 45–46. Plaintiff's allegations render it plausible that she would not have been reassigned to less desirable classrooms and working conditions "but-for" her age. *Compare with Kassner*, 496 F.3d at 238

For these reasons, Defendants' motion to dismiss Plaintiff's ADEA discrimination claim against the DOE and Plaintiff's NYSHRL discrimination claim against the Individual Defendants is denied.

## V.  HOSTILE WORK ENVIRONMENT CLAIMS

Defendants also argue that Plaintiff has failed to state a hostile work environment claim under the ADEA and NYSHRL because she fails to plead facts showing that her work environment was "sufficiently severe or pervasive."[15]  Def. Br. at 15.

The standards for evaluating hostile work environment claims are identical under the ADEA and the NYSHRL. *Kelly v. Howard I. Shapiro & Assocs. Consulting Engineers, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013); *Boonmalert*, 721 F. App'x at 33. To state a claim for hostile work environment, a plaintiff must allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of

---

[15] Defendants do not move to dismiss Plaintiff's hostile work environment claim under the NYCHRL. Def. Br. at 14.

the victim's employment and create an abusive working environment." *Boonmalert*, 721 F. App'x at 33.  "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015).  To determine whether an incident or series of incidents is "sufficiently severe or pervasive to alter the conditions" of a plaintiff's work environment, the Court "must consider the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. at 320–21 (internal citations and quotation marks omitted).

The Complaint contains no allegations regarding "physically threatening or humiliating" conduct.  *Littlejohn*, 795 F.3d at 321.  Nor do Plaintiff's allegations demonstrate "discriminatory intimidation, ridicule, [or] insult." *Boonmalert*, 721 F. App'x at 33.  Plaintiff simply fails to allege any conduct so severe and pervasive that a reasonable person would find her workplace "hostile" or "abusive." *Id*.; *compare Littlejohn*, 795 F.3d at 321 (allegations that African-American employee's supervisor made negative statements about employee to another supervisor, distanced herself from employee, declined to meet with employee, and reprimanded employee were insufficient to state hostile work environment claim), *with* Kassner, 496 F.3d at 240 (allegations that defendants repeatedly made degrading comments towards plaintiff, including, but not limited to, "drop dead," "retire early," "take off all of that make-up," and "take off your wig" were sufficient to state ADEA hostile work environment claim).  Accordingly, Defendants' motion to dismiss Plaintiff's ADEA hostile work environment claim against the DOE and Plaintiff's NYSHRL hostile work environment claim against the Individual Defendants is granted.

## VI.   RETALIATION CLAIMS

Defendants finally argue that Plaintiff fails to state a retaliation claim under the ADEA, NYSHRL, NYCHRL, and the Rehabilitation Act.  Def. Br. at 16.

   A.   Retaliation Based on Age Under
        ADEA, NYSHRL, and NYCHRL

The ADEA prohibits an employer from retaliating against an individual employee because of the individual's opposing any practice made unlawful under the statute. 29 U.S.C. § 623(d). The NYSHRL and the NYCHRL contain similar provisions that describe retaliation as an unlawful discriminatory practice.  N.Y. Exec. Law § 296(7); N.Y.C. Admin. Code § 8–107(7).  As such, retaliation claims under the ADEA, NYSHRL, and NYCHRL are analyzed under similar frameworks.  *See e.g.*, *Kassner*, 496 F.3d at 243.

To state a claim of retaliation, Plaintiff must give plausible support to the reduced *prima facie* requirements of "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Littlejohn*, 795 F.3d at 315, 218.  "The Supreme Court and Second Circuit have defined 'adverse action' for the purposes of [an ADEA] retaliation claim broadly."  *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 539 (S.D.N.Y. 2016); *see also Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 44 (2d Cir. 2019) ("[t]he proper question for retaliation claim is whether the adverse action to which the plaintiff was subjected could well have dissuaded a reasonable employee in his position from complaining of unlawful discrimination").  In addition, a plaintiff must allege that the protected activity was a "but-for" cause of the employer's adverse actions.  *Gorzynski*, 596 F.3d at 110.

Plaintiff undisputedly engaged in a protected activity *under the ADEA* when she filed a

charge of age discrimination jointly with the SDHR and EEOC in June 2022.[16]  Am. Compl. ¶ 42.

Defendants do not dispute that they were aware of such protected activity.  Defendants solely

contend that Plaintiff fails to allege a subsequent adverse employment action and fails to plead

causal connection between the protected activity and purported adverse actions.  Def. Br. 21–23.

Plaintiff's Complaint is replete with alleged retaliatory actions that occurred within months

after she filed her charge with the SDHR and EEOC in June 2022.  For example, Plaintiff alleges

that two months after she filed her charge, all four Individual Defendants called her into the

administration office to inform her she was reassigned to a different classroom, reflecting her

fourth move in the span of two years.  Am. Compl. ¶ 45.  One month thereafter, Plaintiff was

placed on an improvement plan.  Am. Compl. ¶ 47.  Additionally, several times in the months after

Plaintiff filed her SDHR and EEOC charge, she received negative observation ratings.  Am.

Compl. ¶¶ 48, 51.  These alleged retaliatory acts "could well [] dissuade[] a reasonable employee

in [her] position from complaining of unlawful discrimination."  *Davis-Garett*, 921 F.3d at 44; *see

e.g.*, *Zoulas.*, 400 F. Supp. 3d at 58 (holding that a negative performance review might have

dissuaded a reasonable worker from making or supporting a charge of discrimination so as to

adequately plead materially adverse action for plaintiff's ADEA retaliation claim); *Cerni*, 208 F.

Supp. 3d at 539 (same).

Plaintiff, however, has failed to adequately plead causation.  As previously discussed, while

a plaintiff must allege that the protected activity was a "but-for" cause of the employer's adverse

actions, *Gorzynski*, 596 F.3d at 110, the plaintiff need only "plead facts that give 'plausible support

---

[16] A plaintiff engages in a protected activity *under the ADEA* if she has "a good faith, reasonable belief that [s]he [is] opposing an employment practice made unlawful *by . . . [the ADEA]*."  *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (emphasis added) (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001)).  Plaintiff's filing of the dual charge of age discrimination with the EEOC and SDHR in June 2022 is the first time, as per the Complaint, that Plaintiff opposed an employment practice *based on her age*, despite alleging prior complaints she made to DOE on behalf of her special education students.  Plaintiff appears to concede this fact in her briefing.  Pl. Opp. at 19.

to a minimal inference' of the requisite discriminatory causality." *Marcus*, 661 F. App'x at 32 (citing *Littlejohn*, 795 F.3d 310–11). "Decisions by judges in this Circuit have considered temporal proximity between a protected activity and a materially adverse action sufficient to plead causal connection for an ADEA retaliation claim." *Zoulas*, 400 F. Supp. 3d at 58–59 (collecting cases). Indeed, with respect to the retaliatory adverse actions described above, all occurred within months of Plaintiff filing her SDHR and EEOC charge.

However, courts in this Circuit "have found that where even very close temporal proximity exists, the requisite causal connection will falter if the employer's complained-of-conduct began before the employee's corresponding protected activity." *See Wang v. Palmisano*, 157 F. Supp. 3d 306, 327 (S.D.N.Y. 2016) (collecting cases); *see also Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."). Here, each of the retaliatory adverse actions that Plaintiff alleges were, by her own admissions, frequently occurring well *before* she filed an SDHR and EEOC charge. Plaintiff alleges that, after filing her SDHR and EEOC complaint, she was ineligible to apply for per session opportunities, received negative evaluations, had her classroom changed, and was placed on an improvement plan. Am. Compl. at ¶¶ 44–45, 47–48, 50–52. Yet, prior to her SDHR filing on June 10, 2022, Plaintiff alleges that she had already been placed on an improvement plan, received multiple negative evaluations, and her "grade and classroom ha[d] been moved five times in 2 years." Am. Compl. at ¶¶ 11–12, 14–16, 18–20, 23, 29, 35–36, 37, 45. *See Floyd v. S. Westchester BOCES*, No. 14-CV-5842 (VB), 2015 WL 5459992, at *9 (S.D.N.Y. July 31, 2015) (dismissing retaliation claim where the complained of acts, negative performance evaluations and reassignment, occurred before and after EEOC complaint).

Accordingly, Defendants' motion to dismiss Plaintiff's ADEA retaliation claim against

the DOE and Plaintiff's NYSHRL and NYCHRL retaliation claims against the Individual Defendants is granted for failure to allege a causal connection.

    B.  <u>Retaliation Under the Rehabilitation Act</u>

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of [his or] her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]"[17]  29 U.S.C. § 794(a).  This provision not only protects individuals with disabilities, but also "extends its remedies to any person aggrieved by the discrimination of a person on the basis of his or her disability[.]"  *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997), *recognized as by Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 171 (2d Cir. 2001).  "Thus, a teacher who advocates on behalf of his special education students has standing to bring a retaliation claim under the Rehabilitation Act."  *Mitchell v. New York City Dep't of Educ. & Daisy Fontanez*, No. 20-CV-1555 (PGG) (SLC), 2022 WL 21778421, at *10 (S.D.N.Y. Dec. 12, 2022) (collecting cases).

To allege a *prima facie* Rehabilitation Act retaliation claim, then, a plaintiff must plausibly allege "(i) [a] protected activity; (ii) [that] the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."  *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002).  At the pleading stage, a plaintiff's "burden . . . is *de minimis*."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

Here, Defendants concede that Plaintiff engaged in a protected activity under the Rehabilitation Act when she made complaints on behalf of her special education students.  *See*

---

[17] Defendants do not contest that they receive federal financial assistance, and therefore the Court assumes this is satisfied for purposes of this motion.

Def. Br. at 16.  Plaintiff also alleges facts which demonstrate that Defendants were aware of Plaintiff's attempts to seek remedies for her students.  Am. Compl. ¶¶ 30, 34, 42.  For the third prong, Plaintiff must allege an adverse employment action, which is described in the context of a Rehabilitation Act retaliation claim as a "materially adverse change in the terms, privileges, duration and conditions of employment."  *Treglia*, 313 F.3d at 720. The Court has already discussed, at great length, the various adverse actions that Plaintiff has alleged in her Complaint. *See supra* at Sections IV.A, VI.A.  Thus, the sole remaining issue is whether Plaintiff adequately has alleged a plausible causal connection between her complaints on behalf of her special education students and the various purported adverse actions she endured.

To establish a causal connection for a *prima facie* Section 504 retaliation claim, "a plaintiff must allege that the protected activity was a substantial motivating factor in the adverse employment action." *Mitchell*, 2022 WL 21778421, at *12 (citing *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed.*, 444 F.3d 158, 167 (2d Cir. 2006)); *see also Volpe v. New York City Dep't of Educ.*, 195 F. Supp. 3d 582, 597 (S.D.N.Y. 2016).  "Causation can be shown indirectly by demonstrating that the protective activity was closely followed in time by the adverse action." *Volpe*, 195 F. Supp. 3d at 597 (citing *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001)). Although there is no bright line, "district courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray v. Visiting Nurse Servs.*, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007) (collecting cases).  However, the Second Circuit has "previously held that five months is not too long to find the causal relationship." *Gorzynski*, 596 F.3d at 110.

Here, Plaintiff must rely on indirect proof giving rise to an inference of causation because the Complaint is devoid of any allegations that Defendants ever referenced Plaintiff's advocacy on behalf of her students in connection with any of the alleged adverse actions.  Plaintiff alleges

she engaged in protective activity under the Rehabilitation Act on November 19, 2021 (Am. Compl. ¶ 30), December 10, 2021 (Am. Compl. ¶ 34), and March 25, 2022 (Am. Compl. ¶ 34).[18] The Complaint alleges no purported adverse action that occurred within five months of Plaintiff's November 2021 complaint. Am. Compl. ¶¶ 30–35. The only purported adverse actions that Plaintiff alleges occurred within five months of her December 2021 and March 2022 complaints were negative observation ratings that she received on April 2, 2022, April 29, 2022, and May 4, 2022. Am. Compl. ¶¶ 35–37. However, as previously discussed, courts in this Circuit "have found that where even very close temporal proximity exists, the requisite causal connection will falter if the employer's complained-of-conduct began before the employee's corresponding protected activity." See Wang, 157 F. Supp. 3d at 327. Plaintiff, by her own admissions, concedes that she had received negative observation ratings frequently well before her December 2021 and March 2022 complaints on behalf of her students. See e.g., Am. Compl. ¶¶ 11, 12, 19, 20, 27. As a result, Plaintiff fails to sufficiently allege the required causal connection, and therefore, Defendants' motion to dismiss Plaintiff's Rehabilitation Act retaliation claim against DOE is granted.

## **CONCLUSION**

For the foregoing reasons, the Court resolves Defendants' motion to dismiss as follows:

- The motion is GRANTED with respect to all ADEA and Rehabilitation Act claims against the Individual Defendants.

- The motion is GRANTED with respect to all NYSHRL and NYCHRL claims against DOE for failure to satisfy the notice of claim requirement.

- The motion is DENIED with respect to Plaintiff's ADEA discrimination claim against the DOE and Plaintiff's NYSHRL discrimination claim against the Individual Defendants. However, claims based on any allegations with respect to events arising prior to August 14, 2021 are time-barred for purposes of Plaintiff's ADEA discrimination and retaliation claims against the DOE. Although, any discriminatory adverse actions that occurred before August 14, 2021 may provide relevant

---

[18] As previously noted, claims predicated on Plaintiff's complaint on September 2019, Am. Compl. ¶ 7, are time-barred. See supra at Section III.C.

background evidence in the context of otherwise timely claims at the summary judgment stage. *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019).

- The motion is GRANTED with respect to Plaintiff's ADEA hostile work environment claim against the DOE and Plaintiff's NYSHRL and NYCHRL hostile work environment claim against the Individual Defendants.

- The motion is GRANTED with respect to Plaintiff's ADEA retaliation claim against the DOE and Plaintiff's NYSHRL retaliation claim against the Individual Defendants.

- The motion is GRANTED with respect to Plaintiff's retaliation claim under the Rehabilitation Act.

As previously noted, Defendants did not move to dismiss Plaintiff's discrimination or hostile work environment claims under the NYCHRL against the Individual Defendants, and thus those claims remain. Additionally, Plaintiff's ADEA discrimination claim against DOE and NYSHRL discrimination claim against the Individual Defendants adequately state a claim for relief. The Clerk of Court is respectfully requested to terminate Docket Entry 23.

**SO ORDERED.**

Date:  **March 27, 2024**
        **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**